[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13998

_____

D.C. Docket No. 2:98-cv-02581-JEO

MARTHA SELF,
an Individual,

Plaintiff - Appellant,

versus

BELLSOUTH MOBILITY, INC.,
a Corporation,
AMERICAN CELLULAR COMMUNICATIONS CORPORATION,
CINGULAR WIRELESS, LLC,

Defendants -
Third Party Plaintiffs -
Appellees,

GTE WIRELESS INCORPORATED,
a Corporation, et al.,

Defendants,

AT & T MOBILITY, LLC,

Defendant - Appellee,

FEDERAL COMMUNICATIONS COMMISSION, et al.,

Third Party Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 30, 2012)

Before TJOFLAT, CARNES, and JORDAN, Circuit Judges.

CARNES, Circuit Judge:

Spurred on by Congress, the Federal Communications Commission issued an order requiring telecommunications carriers to make payments into a Universal Service Fund for subsidizing services for certain categories of consumers. The carriers' mandatory payments into the fund were calculated based on their interstate and intrastate revenues. The FCC allowed the carriers to recover the amount of their payments by charging their customers a monthly fee.

After the order went into effect and the carriers made payments into the fund and collected fees from their customers, a federal appeals court held that the FCC had exceeded its authority by including intrastate revenues in the calculation of the payments the carriers were required to make. The court did not decide what should be done about the money the carriers had already paid into the fund or

2

about the fees the customers had already paid to the carriers.  The FCC, however, issued orders determining that the court decision would not be applied retroactively and that there would be no refunds of the payments that the carriers had made.  The question remains what should happen to the intrastate portion of the fees that the customers paid to reimburse the carriers for the payments they made to the fund.  Are the customers entitled to a refund of any portion of the fees they paid the carriers even though the FCC has denied the carriers a refund of any portion of the payments the carriers made to the fund?

That is the motivating issue in this case, but it is not the specific question presented by this appeal.  Instead, the question we have is whether the district court has subject matter jurisdiction to decide that issue.  In answering that question, we are reminded of Justice Holmes' view about the comparative difficulty of deciding cases.  He said that "when you walk up to the lion and lay hold the hide comes off and the same old donkey of a question of law is underneath."[1]  In our experience that view is not always accurate, but it is here.  The best way for us to get the hide off the lion in this case is to summarize the

---

[1] Letter from Oliver Wendell Holmes, Jr. to Frederick Pollock (Dec. 11, 1909), in 1 Holmes – Pollock Letters:  The Correspondence of Mr. Justice Holmes and Sir Frederick Pollock 1874–1932 156 (Mark DeWolfe Howe ed., 2nd ed. 1941).

applicable law, including the relevant FCC orders, before setting out the procedural history and facts. Be forewarned that there is a lot of hide.

I.

Congress passed the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, to ensure that all Americans have access to a baseline level of affordable telecommunications services. To help achieve that goal, the Act directs the FCC to create "specific, predictable and sufficient Federal and State mechanisms to preserve and advance universal service." 47 U.S.C. § 254(b)(5). The Act also lists several "[u]niversal service principles" that the FCC must follow when creating those federal and state mechanisms. Id. § 254(b). One principle is that telecommunications services should be available to consumers "in all regions of the Nation, including low-income consumers and those in rural, insular, and high cost areas." Id. § 254(b)(3). Another principle is that "schools and classrooms, health care providers, and libraries should have access to advanced telecommunications services." Id. § 254(b)(6).

The Act does not allocate any funds to finance the FCC's creation and administration of the "universal service support mechanisms." Id. § 254(a)(1); see also id. § 254(d). Instead, it provides that all interstate telecommunications carriers "shall contribute, on an equitable and nondiscriminatory basis, to the . . .

4

mechanisms established by the [FCC] to preserve and advance universal service." Id. § 254(d).  In other words, carriers must fund any universal service support mechanisms that the FCC creates under its § 254(b) authority.

The FCC implemented the Act's universal service requirements by issuing a "Universal Service Order" in May 1997.  In re Fed.-State Joint Bd. on Universal Serv., 12 FCC Rcd. 8776 (1997) [hereinafter "Universal Service Order"], aff'd in part and rev'd in part by Tex. Office of Pub. Util. Counsel v. FCC, 183 F.3d 393 (5th Cir. 1999).  That order created "universal service support mechanisms" for four different categories of need:  high-cost areas, low-income consumers, rural healthcare providers, and schools and libraries.  Id. at 8787, 8792–97.  All four categories of support were financed through a Universal Service Fund ("USF"), which was in turn funded by mandatory contributions from interstate telecommunications carriers.  Id. at 8797; see also id. at 8780–81.  The contributions used to finance the high-cost and the low-income support mechanisms were based solely on the carriers' interstate revenues.  Id. at 9201; see also id. at 9198.  The contributions used to support schools, libraries, and rural healthcare providers, however, were based in part on the carriers' intrastate revenues.  Id. at 9203–05; cf. id. at 9192 ("[T]he Commission has jurisdiction to assess contributions for the universal service support mechanisms from intrastate

5

as well as interstate revenues . . . .").

The Universal Service Order authorized carriers to recover their mandatory USF contributions from certain customers. Id. at 9198–99. Specifically, the order stated that "carriers will be permitted, but not required, to pass through their contributions to their interstate access and interexchange customers." Id. at 9199 (emphasis added). It seems odd to describe the carriers as "pass[ing] through their contributions" by requiring customers to pay them, but such is FCC-speak. The Universal Service Order did not specify how the carriers should pass through their USF contributions if they chose to do so (which, of course, they did). The order did provide that any passing through had to be done "in an equitable and nondiscriminatory fashion." Id. at 9209; see also id. at 9199. Carriers started making their mandatory USF contributions and passing them through to customers on January 1, 1998. Id. at 8813.

In later orders, the FCC appointed the Universal Service Administrative Company to administer all universal service program activities. See, e.g., In re Changes to the Bd. of Directors of the Nat'l Exch. Carrier Assoc., Inc., 12 FCC Rcd. 18400, 18407, 18415 (1997); see also 47 C.F.R. § 54.701(a). That company is responsible for, among other things, "billing [carriers], collecting contributions to the universal service support mechanisms, and disbursing universal service

6

support funds." 47 C.F.R. § 54.702(b).

After the FCC issued the Universal Service Order, several carriers challenged it by filing petitions for review in various federal courts of appeals. See generally 28 U.S.C. § 2344 ("Any party aggrieved by [a] final order [of the FCC] may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies."). The Judicial Panel on Multidistrict Litigation consolidated those challenges in the Fifth Circuit, which resolved all of them in Texas Office of Public Utility Counsel v. FCC, 183 F.3d 393 (5th Cir. 1999).

The Texas Office decision resolved a number of issues about the legality of different parts of the Universal Service Order, but only one of the rulings is relevant here. The Fifth Circuit decided that the FCC had "exceeded its jurisdictional authority when it assessed contributions . . . based on the combined intrastate and interstate revenues of interstate telecommunications providers." Id. at 409. The Court reasoned that, because the FCC has no jurisdiction to regulate intrastate telecommunications matters, it could not calculate carriers' USF contributions based on a percentage of their intrastate revenues. See id. at 447–48. For that reason, the Court "reverse[d] that portion of the [Universal Service] Order that includes intrastate revenues in the calculation of universal service

7

contributions." Id. at 448; see also id. at 449 ("[We] deny the FCC jurisdiction over . . . universal service contributions based on intrastate revenues.").

That is what the Fifth Circuit decided in Texas Office, but equally important for our purposes is what the Court did not decide in that case. The Court did not decide the legality of those parts of the Universal Service Order that allowed carriers to pass through their USF contributions to customers. Nor did the Court decide whether the Universal Service Administrative Company must refund the intrastate-revenue-based USF contributions it had already collected from carriers. Neither of those issues was before the Court.

The Fifth Circuit released its Texas Office decision on July 30, 1999, with the mandate scheduled to issue on September 20, 1999. See In re Fed.-State Joint Bd. on Universal Serv., 15 FCC Rcd. 1679, 1685 (1999) [hereinafter "Fifth Circuit Remand Order"]. Before the mandate issued, the FCC moved for a stay of proceedings, which the Court granted in part by ordering that its mandate would issue on November 1, 1999. Id. Until that date, the FCC, via the Universal Service Administrative Company, continued to collect some of the USF contributions from carriers based on a percentage of their intrastate and interstate revenues.

During the period between January 1, 1998 (when the FCC's Universal

8

Service Order became effective), and November 1, 1999 (when the Texas Office mandate issued), the Universal Service Administrative Company collected from carriers about $1.6 billion in USF contributions that were based on the carriers' intrastate revenues. See In re Fed.-State Joint Bd. on Universal Serv. Access Charge Reform Univ. Serv. Contribution Methodology, 23 FCC Rcd. 6221, 6227 (2008). Many carriers passed through their USF contributions to customers by charging them a monthly USF fee. One of those carriers was AT&T, the defendant in this case, and one of its customers was Martha Self, the plaintiff.

After the Fifth Circuit issued the Texas Office decision but before the mandate issued on November 1, 1999, the FCC released what it has titled a "Fifth Circuit Remand Order." See 15 FCC Rcd. 1679. That order acknowledged that the Texas Office decision had held "that the Commission had exceeded its jurisdictional authority by assessing contributions . . . based, in part, on the intrastate revenues of universal service contributors." Id. at 1684. To cure that defect, the FCC's Fifth Circuit Remand Order "eliminated intrastate revenues from the contribution base[s]" of the schools and libraries support mechanism and also from the rural healthcare providers support mechanism (the only two that were funded using USF contributions based in part on intrastate revenues). Id. at 1685. The FCC replaced those contribution formulas with a new one that calculated the

9

carriers' USF contributions by using a percentage of their interstate and international revenues. Id. at 1685–86. Most importantly for present purposes, the Fifth Circuit Remand Order specified that the changes to the USF contribution bases would apply prospectively and would become effective on the same day that the mandate issued for the Texas Office decision, November 1, 1999. Id. at 1685; see also id. at 1679. That order did not mention the possibility of any refund.

On December 6, 1999, AT&T filed with the FCC a petition for reconsideration and clarification of its Fifth Circuit Remand Order. See In re Fed.-State Joint Bd. on Universal Serv. Access Charge Reform, 20 FCC Rcd. 13779, 13780 (2005) [hereinafter "2005 Bureau Order"]. The petition asked the FCC to "reconsider its decision to implement the Fifth Circuit's decision on a prospective basis." Id. at 13780–81. The petition also asked the FCC "to provide retroactive refunds for [AT&T's] contributions based on intrastate revenues for the period from January 1, 1998 through October 31, 1999." Id. at 13781. AT&T states in its brief to this Court that it represented to the FCC that any refunds from the USF "would be passed on to its customers." Appellee Br. 3–4.

The FCC did not respond to AT&T's petition for more than five years. In August 2005, the FCC's Wireline Competition Bureau issued an order addressing, but not resolving, the petition. This "2005 Bureau Order" "clarif[ied] the

10

Commission's decision in the [FCC's 1999] Fifth Circuit Remand Order to apply the Fifth Circuit decision prospectively," which meant that the changes to the USF contribution formulas "became effective on a prospective basis, beginning November 1, 1999." 20 FCC Rcd. at 13783 (2005) (emphasis omitted). The 2005 Bureau Order also reiterated the view that the Texas Office decision did not affect those parts of the Universal Service Order that authorized carriers to pass through their USF contributions to customers. See id. at 13779, 13781. The order did not address AT&T's request for a refund.[2]

A few years later, on April 11, 2008, the FCC finally issued an order denying AT&T's 1999 petition for reconsideration and a refund. See In re Fed.-State Joint Bd. on Universal Serv. Access Charge Reform Universal Serv. Contribution Methodology, 23 FCC Rcd. 6221 (2008) [hereinafter "2008 Order"]. This 2008 Order again clarified that carriers "may recover their [USF] contributions from customers through rates charged for all services," id. at 6224, and it confirmed that the Texas Office decision applies only "prospectively," id. at

---

[2] It is not clear whether an order issued by the FCC's Wireline Competition Bureau is a "final order[] of the Federal Communications Commission" within the meaning of 28 U.S.C. § 2342. We do not resolve that issue here because it does not affect the outcome of this case. We do note, however, that the FCC has treated the 2005 Bureau Order as if it were issued by the full Commission. See, e.g., In re Fed.-State Joint Bd. on Universal Serv. Access Charge Reform Universal Serv. Contribution Methodology, 23 FCC Rcd. 6221, 6224 (2008) (describing the 2005 Bureau Order as one in which "we clarified" the impact of the Fifth Circuit's Texas Office decision).

11

6226. Because the court decision does not apply retroactively, the FCC concluded, AT&T is not entitled to a refund of the intrastate-revenue-based USF contributions, which AT&T paid to the Universal Service Administrative Company before the Texas Office mandate issued on November 1, 1999. Id. at 6222.

The FCC's 2008 Order justified its prospective treatment of the Texas Office decision and its denial of a refund to carriers by reasoning that "retroactive application" of that decision "would work a manifest injustice" on current customers and on the universal service support mechanisms. Id. at 6227. According to the FCC, "a decision to compel refunds would require [the Universal Service Administrative Company] to refund to the contributing carriers more than one billion dollars in monies already disbursed to thousands of schools, libraries and rural health care providers." Id. Recouping that already-distributed money and sending it back to carriers "would be a bit like unscrambling eggs." Id. at 6228 (quotation marks omitted).

The FCC also reasoned that, because it was not feasible to get the money back from schools, libraries, and rural healthcare providers, the Universal Service Administrative Company would have to raise the revenue for a refund by raising the USF assessments on current carriers. Id. at 6227. Those current carriers

would, in turn, likely pass through the higher USF assessments to their current customers.  Id. at 6227–28.  The FCC explained:

> The net effect of any such refund would be that 2008 consumers subsidize charges that should have been paid by consumers in 1998 and 1999 had the Commission assessed only interstate and international revenue (and excluded intrastate revenue).  In our view, such an outcome—higher USF charges to today's customers—would be fundamentally at odds with our Section 254 mandate to preserve and advance universal service.  Today's consumers would have to shoulder the burden of the refunds while having no responsibility for causing the underlying problem.  The harms to today's end-users and to the universal service system itself would be undeniable should retroactive effect be given to the Fifth Circuit decision.

Id. at 6227 (footnotes omitted).

On top of all that, the FCC continued, there would be large administrative costs and burdens of issuing a refund.  Id. at 6228.  Carriers would have to spend an "enormous" amount of time to track down customers from the 1990s just to give them a small refund.  Id.  The cost of locating those former customers could potentially "overwhelm the amounts available for distribution as refunds."  Id. at 6228–29.  For those reasons, the FCC's 2008 Order refused to apply the Texas Office decision retroactively and denied AT&T's request for a refund of the intrastate-revenue-based USF contributions, which AT&T had paid to the Universal Service Administrative Company between January 1, 1998 and October 31, 1999.  See id. at 6222.

13

II.

We now turn to the facts of this case, which are undisputed.  In February 1995, before Congress passed the Telecommunications Act of 1996, Martha Self entered into a contract with AT&T for interstate cellular phone service.  A few years later, AT&T notified her that, beginning with the January 1998 billing cycle, it was going to start charging her a "per-line Universal Service Support charge." That charge was AT&T's pass through of the USF contributions it was required to make under the FCC's Universal Service Order.  Cf. 47 C.F.R. § 69.131 (authorizing telecommunications carriers to recover their USF contributions from customers on a "per-line basis"); In re Telecomms. Relay Serv., N. Am. Numbering Plan, 17 FCC Rcd. 24952, 24975–76 (2002) (explaining that carriers may recover their USF contributions as a "separate universal service line-item charge").

Unhappy about the new charge on her cell phone bill, Self filed a putative class action against AT&T in Alabama state court in September 1998.  Her complaint asserted a number of state law claims, including breach of contract and unjust enrichment.  AT&T timely removed the case to federal district court.

Not much happened in the case for several years after it was removed because AT&T and other telecommunications carriers were busy challenging the

14

FCC's Universal Service Order in the Fifth Circuit's <u>Texas Office</u> proceedings. In March 2000, which was four months after the mandate had issued in the <u>Texas Office</u> case, the district court stayed proceedings in this case pending the outcome of AT&T's petition to the FCC for reconsideration of the 1999 Fifth Circuit Remand Order. The case sat still for four more years.

In October 2004, Self filed a fifth amended complaint, which is the relevant one for this appeal, re-alleging her state law claims of breach of contract and unjust enrichment. She also added two federal claims under the Federal Communications Act, 47 U.S.C. § 151 <u>et seq.</u> The first of those FCA claims alleged that AT&T had violated § 201(b), which provides that "[a]ll charges, practices, classifications, and regulations for and in connection with . . . communication service, shall be just and reasonable." Self's second FCA claim alleged that AT&T had violated § 202(a), which makes it unlawful "for any common carrier to make any unjust or unreasonable discrimination in charges, practices, . . . or services." <u>See generally</u> 47 U.S.C. § 206 (authorizing actions against carriers for violations of the FCA).

Self's theory of recovery for the claims in her fifth amended complaint is that between January 1, 1998 and October 31, 1999, AT&T passed through to its customers a USF support charge that was based, in part, on intrastate revenues.

Because the <u>Texas Office</u> decision declared that those intrastate-revenue-based USF contributions were unlawfully assessed on carriers, it follows that AT&T had charged Self and customers like her unlawful fees to reimburse itself for contributions that had been unlawfully assessed. Thus AT&T charged Self and other customers unlawfully calculated fees. Charging customers those fees, Self claims, was a breach of the cell phone service contract, an unlawful taking, and an "unjust or unreasonable" charge in violation of 47 U.S.C. § 201(b) and § 202(a). As a remedy for AT&T's alleged misconduct, Self and her putative class members seek a refund of the intrastate-revenue-based USF fees that AT&T charged its customers between January 1, 1998 and October 31, 1999.

After Self filed her fifth amended complaint, the district court lifted its stay of proceedings and the case started moving again. Self and AT&T eventually filed cross motions for summary judgment. AT&T's motion contended that all of Self's claims should be dismissed for lack of subject matter jurisdiction because they are improper collateral attacks in the district court on final orders of the FCC. Self's motion asked the district court to declare that it does have jurisdiction over her claims.

The district court withheld a ruling on the parties' cross motions for summary judgment until the FCC released its 2008 Order. Less than two weeks

16

after that FCC order issued, the district court entered its own order resolving the

parties' motions. The court made a number of rulings, but only one of them is at

issue in this appeal. The court ruled that it lacks jurisdiction to decide Self's FCA

claims, her state law breach of contract claim, and her state law unjust enrichment

claim "to the extent that they seek retroactive application of the Texas Office

holding."[3]

### III.

At first blush, it would seem that the district court has jurisdiction over all

of Self's claims based on a variety of statutes, including those creating federal

question jurisdiction, 28 U.S.C. § 1331, diversity jurisdiction, id. § 1332, and

supplemental jurisdiction, id. § 1367(a). And beyond those more general grants of

---

[3] The district court did not dismiss all of Self's claims for lack of jurisdiction. It concluded, for example, that "[t]o the extent that the plaintiff asserts claims of unjust and unreasonable charges under [47 U.S.C.] § 201(b) (e.g., collecting more than was authorized, using a greater factor than allowed by the FCC), the court does have jurisdiction to entertain the same." Self and AT&T continued to litigate that and other claims after the district court ruled on the parties' cross motions for summary judgment. AT&T later filed a renewed motion for summary judgment on all of Self's remaining claims (those that the court had not already dismissed for lack of jurisdiction), and the court granted in full AT&T's renewed motion. It was then that Self filed her notice of appeal.

Self does not challenge the court's grant of summary judgment to AT&T on all of her claims that the court concluded it did have jurisdiction to hear. She has raised only the issue of whether the court "erred in holding that it was without jurisdiction to hear Self's federal and state law claims for a refund of universal service fees." Appellant Br. 1. Accordingly, when we refer to "Self's claims" and "Self's claims for a refund," we are referring to the claims that are relevant to this appeal—those that the district court dismissed for lack of jurisdiction when it ruled on the parties' initial cross motions for summary judgment.

17

jurisdiction, the Federal Communications Act gives district courts jurisdiction over any claims brought under that statute. See 47 U.S.C. § 207 ("Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may . . . bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction.").

But things are not always as they seem. There is another statute in the mix, and it provides that: "The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47 . . . ." 28 U.S.C. § 2342 (emphasis added). Section 402(a) states that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter . . . shall be brought as provided by and in the manner prescribed in [28 U.S.C. § 2342]." 47 U.S.C. § 402(a).

Because the courts of appeals have exclusive jurisdiction over claims to enjoin, suspend, or invalidate a final order of the FCC, the district courts do not have it. See FCC v. ITT World Commc'ns, Inc., 466 U.S. 463, 468, 104 S.Ct. 1936, 1939 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies

18

in the Court of Appeals."). That means district courts cannot determine the validity of FCC orders. See Nat'l Ass'n of State Util. Consumer Advocates v. FCC, 457 F.3d 1238, 1247 (11th Cir. 2006) (explaining that 28 U.S.C. § 2342 "vests exclusive jurisdiction in the courts of appeals to determine the validity of all final orders of the Commission" (alterations omitted)).

The district court reasoned that 28 U.S.C. § 2342 deprived it of jurisdiction to hear Self's claims for a refund because "in order to adjudicate [her] claims it is necessary to determine, in part, the validity of certain actions of the FCC." The court acknowledged that the Texas Office decision had held that the FCC could not assess intrastate revenues of service providers in calculating USF contributions. It went on to note that the FCC's Fifth Circuit Remand Order and its 2008 Order determined that Texas Office did not apply retroactively to events occurring before the mandate for that decision issued on November 1, 1999. Self, however, is seeking a refund of fees that she paid before that date—namely, the USF fees that AT&T charged her between January 1, 1998 and October 31, 1999. According to the district court, in order to rule that those USF fees were unlawfully assessed it would have to decide that the Texas Office decision should be applied retroactively to the fees Self paid before November 1, 1999, which would contradict the prospective-only determinations in the two FCC orders. For

19

that reason, the district court concluded that Self's claims against AT&T challenged the validity of the two FCC orders, and under 28 U.S.C. § 2342 it lacked jurisdiction to decide such challenges. That is why the court dismissed Self's claims for lack of jurisdiction. Self disagrees with that reasoning and result.

IV.

With the hide off, this case does reduce to what Justice Holmes would call a donkey of a question of law: Do Self's claims necessarily conflict with final orders of the FCC and thereby depend on the district court being able to collaterally review the correctness or validity of those orders? We agree with the district court that the answer is yes.

In order to establish that she was unlawfully charged a portion of AT&T's intrastate-revenue-based USF contributions, Self relies on the Fifth Circuit's Texas Office decision. That decision does not help her unless it applies to fees that were charged between January 1, 1998 and October 31, 1999, which is the only period during which Self was charged fees based on AT&T's intrastate revenues. If, as the FCC orders in question determined, the Texas Office decision does not apply to any fees charged before the mandate issued in that case on November 1, 1999, then Self loses. It follows that Self's claims necessarily depend on her establishing that at least parts of the FCC's Fifth Circuit Remand

20

Order and its 2008 Order are wrong as a matter of law or are otherwise invalid. She may seek review of the relevant parts of those orders and attempt to establish the invalidity of them in the court of appeals, after seeking reconsideration in the FCC, see 28 U.S.C. § 2344, but she may not seek collateral review of them by filing claims in the district court, see id. § 2342; ITT World Commc'ns, 466 U.S. at 468, 104 S.Ct. at 1939–40.

Self tries to disguise the donkey by arguing that her claims do not attack the validity of a final FCC order because "there is no order of the FCC that required [AT&T] to extract USF charges from its customers." Appellant Br. 45. She insists that because there is no FCC order compelling carriers to pass through their intrastate-revenue-based USF contributions, her position that AT&T wrongfully charged her those fees does not conflict with any FCC order. We are convinced that it does.

Although no FCC order compels carriers like AT&T to recover their USF contributions from customers, at least three FCC orders expressly permit carriers to do so. The Universal Service Order states that carriers are "permitted . . . to pass through their contributions," 12 FCC Rcd. at 9199, the Fifth Circuit Remand Order reiterates that carriers may "recover[] their universal service contributions [through] an end-user charge," 15 FCC Rcd. at 1693, and the 2008 Order

21

"reconfirm[s] that [carriers] may recover their universal service contributions through rates charged for all of their services," 23 FCC Rcd. at 6222. To prevail on her claims, Self must establish that carriers are not permitted to pass through to their customers the cost of their contributions, which would mean that the FCC orders are wrong or invalid. The district court correctly concluded that it lacks jurisdiction to review those orders.

Self also contends the district court erred in ruling that her claims for a refund conflict with the FCC's 2008 Order, which is the one that denied AT&T's request for a refund from the Universal Service Administrative Company. She argues that the 2008 Order applies only to "carriers seeking refunds of USF fees that carriers were required to pay," and points out that she is not a carrier but is instead a customer seeking a refund from a carrier. Appellant Reply Br. 2. She asserts that the order is "silent as to the retroactive application of Texas Office to refund requests by customers," Appellant Reply Br. 4, and because the 2008 Order does not address whether Texas Office applies retroactively to refund requests by customers, the district court would not have to review and invalidate that order to decide that Texas Office applies retroactively to her claims.

We disagree with Self about the scope of the 2008 Order. It did not decide only that carriers are not entitled to a refund. In the petition leading to that order,

22

AT&T sought reconsideration of the Fifth Circuit Remand Order and asked the FCC to do two things:  (1) determine that the Texas Office decision applied retroactively, and (2) order that refunds be given to carriers "for contributions based on intrastate revenues for the period from January 1, 1998 through October 31, 1999."  2005 Bureau Order, 20 FCC Rcd. at 13780–81.  The FCC's 2008 Order denied both requests, reconfirming the agency's view that Texas Office applies only prospectively.  See 2008 Order, 23 FCC Rcd. at 6226–27.  The FCC denied AT&T a refund in the 2008 Order because the Commission adhered to its earlier decision that Texas Office did not apply retroactively.  Id. at 6222.  Self's argument is based on the false premise that the FCC's 2008 Order did not decide that the Texas Office decision applies prospectively only—from November 1, 1999 forward.  It did decide that, and so did the FCC's earlier Fifth Circuit Remand Order.

Finally, Self contends that her claims for a refund do not seek to invalidate any FCC order because the Universal Service Order is "void ab initio" as a result of the Texas Office decision.  Appellant Br. 39.  She cites to decisions holding that agency actions that exceed the agency's jurisdictional authority are "a mere nullity," Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305 (1965), and she argues that because the FCC acted beyond its authority in imposing on carriers

a USF contribution based on their intrastate revenues, we should treat the Universal Service Order as if it never existed. And if the order never existed, she continues, then there was no FCC order between January 1, 1998 and October 31, 1999 that authorized AT&T to charge its customers intrastate-revenue-based USF fees. If so, then AT&T had no legal authority to charge her those fees.

This argument puts the cart before the donkey. For the district court to decide that the Universal Service Order is void <u>ab initio</u>, it would have to first decide that the <u>Texas Office</u> decision applies retroactively to invalidate that order from the beginning, that is, from the date the order became effective on January 1, 1998. In order to do that, the district court would have to decide that the Universal Service Order and the FCC orders determining that <u>Texas Office</u> does not apply retroactively are invalid because they exceed the agency's jurisdictional authority. As we have already stated several times, that is something that the district court lacks jurisdiction to decide. Because the district court lacks jurisdiction to review the FCC's orders at all, it lacks jurisdiction to decide whether the orders are invalid because they are outside the jurisdictional authority of the agency. <u>Cf.</u> <u>King v. Cessna Aircraft Co.</u>, 505 F.3d 1160, 1165 (11th Cir. 2007) (explaining that an appellate court that lacks jurisdiction to review a trial court's decision also lacks jurisdiction to review whether the trial court had jurisdiction over the case);

<u>Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.</u>, 475 F.3d 1228, 1229–30 (11th Cir. 2007) (same).  To pin the tail on the donkey:  a court without jurisdiction to review agency actions lacks jurisdiction to decide whether the agency had jurisdiction to act as it did.

The district court correctly decided that it lacked jurisdiction to decide Self's claims.

**AFFIRMED.**