[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10644
_____

D.C. Docket No. 1:14-cv-00975-ODE


GEETA CHHETRI,
PRATIK CHHETRI,

                                        Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

                                        Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 12, 2016)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

The tragic facts of this case involve a bus crash that happened because the driver fell asleep at the wheel. Two of the survivors of that crash sued the Federal Motor Carrier Safety Administration under the Federal Tort Claims Act, contending that agency officials were at fault for allowing the bus company to continue operating after it should have been declared unsafe to do so. The District Court dismissed the suit for lack of federal subject-matter jurisdiction. Specifically, the District Court held that the United States had not waived its immunity from suit related to the decision allowing the bus company to continue operating because that decision was a discretionary one, excepted under 28 U.S.C. § 2680(a) from the United States' waiver of sovereign immunity for certain tort actions. After careful review, we affirm.

## I.

### A.

On May 31, 2011, Geeta and Pratik Chhetri ("the Chhetris") sustained serious injuries when the Sky Express, Inc. ("Sky Express") bus on which they were riding, leaving from North Carolina and heading to New York, crashed on Interstate 95 in Caroline County, Virginia. The crash resulted from the bus driver falling asleep at the wheel.

2

Prior to the crash, on April 7, 2011, officials of the Federal Motor Carrier Safety Administration ("FMCSA")[1] based in North Carolina conducted a compliance review of Sky Express, a Charlotte-based motor carrier.  After discovering a number of safety violations,[2] the FMCSA assigned Sky Express a proposed safety rating of "unsatisfactory," which would require Sky Express to cease transporting passengers after the safety rating became final in forty-five days and until such time that it could be deemed "fit" to continue.  *See* 49 U.S.C. § 31144(c)(2); 49 C.F.R. § 385.13.  The FMCSA notified Sky Express of its proposed "unsatisfactory" rating on April 12, 2011.

On May 11, 2011, Sky Express, through a transportation-safety consultant it had hired, submitted a written request to an FMCSA official in the Southern Service Center, located in Atlanta, Georgia, asking the FMCSA to raise its safety rating from "unsatisfactory" to "conditional," which would allow Sky Express to continue operating after the forty-five-day period set to expire on May 28, 2011.

---

[1] The FMCSA is the administrative agency tasked with, among other responsibilities, monitoring and ensuring the safe operations of motor carriers including those that, like Sky Express, transport passengers.  In service of its mission, the FMCSA maintains regional service centers and field offices throughout the United States.

[2] The FMCSA compliance review of Sky Express identified the following violations: one instance of failing to conduct post-accident testing on a driver for controlled substances, three instances of using a driver unable to read or speak English, one instance of using a physically unqualified driver, and three instances of requiring or permitting a driver of a passenger-carrying commercial motor vehicle to drive for more than ten consecutive hours.  *See* 49 C.F.R. § 382.303(b); *id.* § 391.11(a), (b)(2); *id.* § 391.11(a), (b)(4); *id.* § 395.5(a)(1).  In conjunction with these violations, Sky Express was assessed a $33,290 fine.

*See generally* 49 C.F.R. §§ 385.3, 385.17(f) (2011).  In its written request, Sky Express explained the various steps it was taking to achieve compliance, including making improvements to its drug-testing policies, creating an accident register, reviewing its drivers' qualifications and implementing new language-training policies, adopting a driver-safety manual, adding additional drivers to specific routes, and developing systems to manage various reporting and inspection requirements.  Sky Express ended its written request by asking that "a review for an upgrade of our safety rating be scheduled as soon as possible."

After internal communications between officials in Atlanta and North Carolina, the FMCSA sent two letters to Sky Express on May 13, 2011.  The first letter denied Sky Express's request for an upgrade to its safety rating because the request "did not include sufficient evidence to justify an upgrade" and "failed to demonstrate that adequate corrective actions have been taken."  The letter continued on to note that a follow-up compliance review had been scheduled to take place prior to June 7, 2011.  The second letter granted Sky Express a ten-day extension of continued operation "based upon [its] good faith effort" and "to provide additional time . . . to conduct a follow-up Compliance Review."  The ten-day extension held in abeyance Sky Express's proposed "unsatisfactory" rating until June 7, 2011.  Had the extension not been granted, the rating would have become final on May 28, 2011.

4

It was during this ten-day extension that the bus crash injuring the Chhetris occurred.

B.

After exhausting their administrative remedies, on April 2, 2014, the Chhetris filed suit against the United States in the United States District Court for the Northern District of Georgia. The Chhetris sought damages for their injuries under the Federal Tort Claims Act ("FTCA") on the theory that the FMCSA officials "failed to use due care and violated federal law" in granting the ten-day extension, which "was grossly and recklessly negligent."

The United States moved to dismiss the Chhetris' complaint on three grounds. *See* Fed. R. Civ. P. 12(b)(1), (b)(3). First, the United States argued that there was no subject-matter jurisdiction because it had not waived its immunity under the FTCA's discretionary-function exception. *See* 28 U.S.C. § 2680(a). Second, the United States argued that the complaint was likewise barred because the Chhetris failed to show that "a private individual under like circumstances" would be liable under governing state tort law. *See id.* § 2674. Third, the United States argued that the Chhetris' complaint should be dismissed for improper venue because the Chhetris did not reside, nor did the negligent or wrongful act or omission occur, in the Northern District of Georgia. *See id.* § 1402(b).

5

On December 19, 2014, the District Court entered an order granting the United States' motion to dismiss.  Concluding that the FTCA's discretionary-function exception barred the Chhetris' claim, the Court did not reach the United States' alternative grounds for dismissal.

The District Court began its analysis of the discretionary-function exception with the Supreme Court's seminal discussion of that exception in *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988).  Under the analysis called for by *Berkovitz*, courts use a two-prong test to determine whether the exception applies:  First, the action in question must "involve[] an element of judgment or choice."  *Id.* at 536, 108 S. Ct. at 1958.  Second, the action must be "of the kind that the discretionary function exception was designed to shield"—that is, it must be "based on considerations of public policy."  *Id.* at 536–37, 108 S. Ct. at 1959.  If the discretionary-function exception extends to the conduct in question, claims based on that conduct are barred "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

The District Court held that the FMCSA's decision to grant extensions to motor carriers like Sky Express clearly involved an element of judgment or choice under the first prong of the *Berkovitz* analysis.  In line with the "plain language of the regulation" then in effect, 49 C.F.R. § 385.17(f) (2011), the Court noted that the FMCSA was expressly afforded the discretion to grant extensions of up to ten

6

days. *See id.* ("If the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section and the FMCSA cannot make a final determination within the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA."). The Court rejected the Chhetris' argument that the then-current version of § 385.17(f) conflicted with the governing statute, 49 U.S.C. § 31144, and therefore the regulation failed to grant the FMCSA the discretion it purports to, reasoning that the relevant portion of the Hobbs Act, 28 U.S.C. § 2342(3)(A),[3] deprives district courts of the jurisdiction to determine the validity of any rule, regulation, or final order issued by the Secretary of Transportation.[4] The Court also rejected the Chhetris' argument that either of the conditions required for the FMCSA to exercise discretion—that Sky Express submit evidence that corrective actions have been taken and that the FMCSA cannot make a final determination within forty-five days, *see* 49 C.F.R. § 385.17(f) (2011)—had not been met.

Turning to the second prong of the *Berkovitz* analysis, the District Court held that the FMCSA's authority to grant extensions during its review of a motor

---

[3] The Hobbs Act referenced above, 28 U.S.C. §§ 2341–2351, which governs the review of various administrative rules, regulations, and orders, should not be confused with the Act of the same name that criminalizes interstate robbery and extortion, 18 U.S.C. § 1951.

[4] The FMCSA, an agency of the United States Department of Transportation, falls under the regulatory aegis of the Secretary of Transportation. *See* 49 C.F.R. § 1.87(f).

carrier's safety-rating status was "of the kind that the discretionary function exception was designed to shield." Considering the nature of the FMCSA's role of monitoring and regulating the safety of a diverse range of motor carriers, whether to grant a particular extension is "a discretionary decision involving the safety and policy considerations imbued within the statute and its regulations." As both *Berkovitz* prongs were satisfied, the Court concluded that the discretionary-function exception of the FTCA applied and there was no jurisdiction for the suit to proceed.

Having found that the case must be dismissed pursuant to the discretionary-function exception, the Court did not reach the United States' alternative arguments for dismissal. This appeal timely followed.

## II.

Our review of a district court's dismissal of an action for lack of subject-matter jurisdiction is de novo. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 168 (2015). On appeal from a grant of a motion to dismiss, we take as the operative facts the allegations made in the complaint. *See Guevara v. Republic of Peru*, 468 F.3d 1289, 1292 n.1 (11th Cir. 2006) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)).

III.

On appeal the Chhetris contend that the District Court erred by dismissing their complaint. Specifically, they argue that the discretionary-function exception does not apply to the FMCSA officials' actions because the statute at issue, 49 U.S.C. § 31144, clearly prohibits extensions of any length beyond the specified forty-five-day period regardless of a regulation to the contrary then in force, 49 C.F.R. § 385.17(f) (2011). Even if the governing statute did not clearly prohibit the extension granted to Sky Express pursuant to the contested regulation, the Chhetris maintain that the FMCSA officials still lacked the discretion to act as they did because of the absence of two prerequisites under another provision, 49 C.F.R. § 385.17(c). Finally, assuming they are correct about the discretionary-function exception, the Chhetris argue that their complaint is likewise not barred by the due-care exception to the FTCA, 28 U.S.C. § 2680(a), because the FMCSA's decision to grant the ten-day extension to Sky Express was made using a looser safety-compliance standard improperly borrowed from yet another regulatory provision, 49 C.F.R. § 385.17(g).

The United States counters that the District Court correctly dismissed the Chhetris' claims for two reasons. First, the United States argues that the Chhetris' suit is barred because the discretionary-function exception applies. Specifically, the United States contends that the regulations in question involve an element of

9

judgment or choice and are grounded in policy considerations; that FMCSA officials acted in accordance with those regulations when granting the extension; and that the Chhetris cannot challenge the validity of the regulations before the District Court because the pertinent part of the Hobbs Act, 28 U.S.C. § 2342(3)(A), vests jurisdiction over challenges to the validity of the regulations in question exclusively in the courts of appeals. Second, the United States argues that the Chhetris are also barred from bringing suit under the FTCA because the United States, if it were a private person, would not be liable for granting the extension to Sky Express under Virginia tort law.

Our analysis proceeds in two parts. First, we provide an overview of the statutory and regulatory framework in effect when the ten-day extension was granted to Sky Express that structured the FMCSA's authority to extend the time at which a proposed safety rating becomes final. Second, we analyze whether FMCSA officials acted in line with their authority and, if so, whether the discretionary-function exception applies. We conclude, as did the District Court, that the discretionary-function exception applies and thus bars the Chhetris' claims. Accordingly, we do not address whether the due-care exception might apply as

10

well.  Nor do we address whether the Chhetris may be able to show a private tort analog under Virginia law.[5]

### A.

In order "to promote the safe operation of commercial motor vehicles," Congress has tasked the Secretary of Transportation with "determin[ing] whether an owner or operator is fit to operate safely commercial motor vehicles"[6] and "periodically updat[ing] such safety fitness determinations."  49 U.S.C. §§ 31131(a)(1), 31144(a)(1), (a)(2).  As part of the responsibility for assigning safety ratings, the Secretary of Transportation "shall maintain by regulation a procedure" for doing so, which must include "[s]pecific initial and continuing requirements," a "methodology," and "[s]pecific time frames" to make determinations.  *Id.* § 31144(b).  The Secretary of Transportation has delegated this authority to the FMCSA.  49 C.F.R. § 1.87(f).

---

[5] Likewise, we do not reach an issue that the United States raised below but the District Court did not reach:  whether venue was proper in the Northern District of Georgia.  The relevant statute provides that a suit against the United States brought under the FTCA "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. § 1402(b).  Whether venue was proper is uncertain because the Chhetris are citizens of Nepal who reside in Michigan and the location of "the act or omission complained of" remains in dispute.

Because the United States has abandoned its venue challenge on appeal and the Chhetris' claims are independently barred by the discretionary-function exception, we decline to speculate as to whether venue in the Northern District of Georgia was proper.

[6] Although the statute uses the term "an owner or operator" of commercial motor vehicles, the regulations frequently refer to these entities simply as "motor carriers."  For ease of the reader, this opinion will use the latter wherever possible.

The FMCSA, through regulation, has established a safety-rating system comprising three possible ratings: "satisfactory," "conditional," and "unsatisfactory." 49 C.F.R. §§ 385.3, 385.5. A "satisfactory" rating "means that a motor carrier has in place and functioning adequate safety management controls to meet the safety fitness standard" required elsewhere in the FMCSA's regulations. *Id.* § 385.3; *see also id.* § 385.5.[7] A "conditional" rating means that the motor carrier "does not have adequate safety management controls in place" and this lack of safety-management controls "could" violate the safety-fitness requirements. *Id.* § 385.3. An "unsatisfactory" rating means that the motor carrier "does not have adequate safety management controls in place" and this lack of safety-management controls "has" resulted in safety violations. *Id.* In the process of assigning a safety rating, the FMCSA may conduct a "compliance review," which is "an on-site examination of motor carrier operations, such as drivers' hours of service, maintenance and inspection, driver qualification, commercial drivers license requirements, financial responsibility, accidents, hazardous materials, and other

---

[7] The non-exhaustive list of factors that may be considered in determining a safety rating includes, among other considerations, (1) the "[a]dequacy of safety management controls," (2) the "[f]requency and severity of regulatory violations," (3) the "[f]requency and severity of driver/vehicle regulatory violations identified during roadside inspections," (4) the "[n]umber and frequency of out-of-service driver/vehicle violations," (5) the "[i]ncrease or decrease in similar types of regulatory violations discovered during safety or compliance reviews," and (6) the "[f]requency of accidents" and "hazardous materials incidents." 49 C.F.R. § 385.7.

safety and transportation records to determine whether a motor carrier meets the safety fitness standard." *Id.*

If after a compliance review, as relevant here, a motor carrier's safety rating is determined to be "unsatisfactory," that determination serves as notice to the motor carrier that it would be deemed "'unfit' to continue operating" should the proposed "unsatisfactory" rating remain unchanged after the relevant forty-five- or sixty-day period.[8] *See id.* §§ 385.11(d), 385.13(a)(1), (d)(1). Once a motor carrier is determined to be "unfit," it must cease operating until declared "fit." 49 U.S.C. § 31144(c)(1)–(c)(3). After receiving a proposed "unsatisfactory" rating, a motor carrier may request an upgrade before the proposed rating becomes final and the motor carrier would be forced to cease operating. The motor carrier "must make this request in writing" and "must base its request upon evidence that it has taken corrective actions and that its operations currently meet" the required safety standards. 49 C.F.R. § 385.17(b), (c). The FMCSA, in turn, has thirty days to make a "final determination" on the motor carrier's request "based upon the documentation the motor carrier submits, and any additional relevant information." *Id.* § 385.17(d), (e)(1).

---

[8] Generally, a motor carrier is given 60 days before a proposed "unsatisfactory" rating becomes final. Motor carriers that transport passengers or hazardous material are given 45 days. *See* 49 U.S.C. § 31144(c)(1)–(c)(3). Because Sky Express transported passengers, the relevant time period for a safety-rating update is 45 days.

13

Though a request for an upgrade does not toll the time when a proposed safety rating is to become final, the regulations in force at the time of the events giving rise to the Chhetris' suit contained a provision allowing the FMCSA to grant certain extensions. That provision reads in full:

> The filing of a request for change to a proposed or final safety rating under this section does not stay the 45-day period specified in § 385.13(a)(1) for motor carriers transporting passengers or hazardous materials. If the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section and the FMCSA cannot make a final determination within the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA.

*Id.* § 385.17(f) (2011). In 2012, the FMCSA rescinded the provision allowing for these ten-day extensions to "bring [the regulations] into conformity with [49 U.S.C.] § 31144(c)(4)." *See* 77 Fed. Reg. 64,759, 64,760 (Oct. 23, 2012) (codified at 49 C.F.R. pt. 385). Section 31144(c)(4) expressly grants the Secretary of Transportation the discretion to extend the sixty-day period after which a proposed rating becomes final for certain motor carriers while excepting those who transport passengers or hazardous materials. *See* 49 U.S.C. § 31144(c)(4).[9] The remainder

---

[9] Section 31144(c)(4) provides in full:

**(4) Secretary's discretion.**—Except for owners or operators described in paragraphs (2) and (3) [those that transport passengers or hazardous materials], the Secretary may allow an owner or operator who is not fit to continue operating for an additional 60 days after the 61st day after the date of the Secretary's fitness determination, if the Secretary determines that such owner or operator is making a good faith effort to become fit.

14

of § 31144 is silent as to whether motor carriers that transport passengers or hazardous materials may similarly be granted extensions of some duration.

## B.

With this statutory and regulatory background, we turn next to whether the FMCSA's decision to grant a ten-day extension to Sky Express before its proposed "unsatisfactory" rating became final falls under the FTCA's discretionary-function exception, which would defeat the Chhetris' assertion of federal subject-matter jurisdiction over their suit. Before we do so, we must first address whether the relevant portion of the Hobbs Act, 28 U.S.C. § 2342(3)(A), precludes our review of the Chhetris' claims, in whole or in part.

## 1.

The Hobbs Act provides that "[t]he court of appeals" shall have "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" the "rules, regulations, or final orders of . . . the Secretary of Transportation issued pursuant to . . . subchapter III of chapter 311," which includes 49 C.F.R. § 385.17(f) (2011), the now-rescinded regulation allowing the FMCSA to grant the extension in question. *See* 28 U.S.C. § 2342(3)(A). Rather than bring an original action in the district court, then, challenges to administrative

49 U.S.C. § 31144(c)(4).

15

regulations must generally be brought before the courts of appeals pursuant to the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*[10]

This limitation on the district courts' jurisdiction contained in the Hobbs Act "promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows 'uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress.'" *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010) (quoting *United States v. Dunifer*, 219 F.3d 1004, 1008 (9th Cir. 2000)). This limitation on the district courts' jurisdiction also accords fully with the long-standing notion that "[i]t was not intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort." *Dalehite v. United States*, 346 U.S. 15, 27, 73 S. Ct. 956, 963, 97 L. Ed. 1427 (1953) (quotation marks and citation omitted). Federal courts "have traditionally refused to question the judgments" of administrative agencies in promulgating regulations—as opposed to reviewing the content of those regulations or the procedure used to produce them—because "the power to adopt regulations or by-laws . . . for the preservation

---

[10] Relevant here, the United States' waiver of sovereign immunity under the Administrative Procedure Act is much broader than that under the FTCA. *See, e.g.*, *Golden Pac. Bancorp v. Clarke*, 837 F.2d 509, 512 (D.C. Cir. 1988).

of the public health" is "generally regarded as discretionary" and regulations are, "in their nature," "legislative." *Id.* at 43, 73 S. Ct. at 971–72 (quotation marks and citation omitted).

Given their obvious parallels but distinct purposes, the exact relationship between the Hobbs Act's review provisions and the FTCA's discretionary-function exception is complicated. Though it is clear that head-on challenges to the validity of regulations may not be brought in the district courts under the Hobbs Act, the ability to bring challenges that touch on, but do not seek to completely invalidate, the same regulations remains somewhat murkier. Whether a claim brought against the United States under the FTCA that touches on, but does not seek to invalidate, a regulation can be maintained turns on whether the resolution of the claim can be considered "wholly collateral" to the regulation's validity or whether the two are "inescapably intertwined." *See Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186–88 (2d Cir. 2001); *Beins v. United States*, 695 F.2d 591, 597–600 (D.C. Cir. 1982); *accord Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–16, 114 S. Ct. 771, 779–81, 127 L. Ed. 2d 29 (1994). Though this "wholly collateral"–"inescapably intertwined" determination is one that will necessarily be made context by context and regulation by regulation, our recent decision in *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014), helps frame our inquiry here.

17

In *Mais*, we were confronted with a lawsuit that challenged a declaratory ruling of the Federal Communications Commission as inconsistent with the governing language of the Telephone Consumer Protection Act of 1991.[11] Answering a certified question from the district court, we held that a nearly identical provision of the Hobbs Act, 28 U.S.C. § 2342(1),[12] deprived that court of jurisdiction to hear the suit. We so concluded even though "Mais did not sue with the primary intent 'to enjoin, set aside, annul, or suspend' an FCC order" and "Mais's claim did not necessarily depend on invalidation of the agency's ruling." *Id.* at 1119. Nor would it matter, we noted, if the challenge were raised as part of the plaintiff's claim or as an affirmative defense. Our "Hobbs Act jurisdictional analysis looks to the 'practical effect' of a proceeding, not the plaintiff's central purpose for bringing suit." *Id.* at 1120 (quoting *B.F. Goodrich Co. v. Nw. Indus., Inc.*, 424 F.2d 1349, 1353–54 (3d Cir. 1970)). The courts of appeals, therefore,

---

[11] The plaintiff, Mais, brought suit against the defendant, Gulf Coast Collection Bureau, Inc., for making autodialed or prerecorded calls that he alleged violated the Telephone Consumer Protection Act of 1991 ("TCPA"). *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1113 (11th Cir. 2014). Gulf Coast moved for summary judgment on the grounds that it had received "prior express consent" for the calls from Mais's wife when she completed various hospital-admissions forms, pursuant to a 2008 declaratory ruling of the Federal Communications Commission ("FCC"). *Id.* at 1115. Mais challenged the validity of his alleged consent under the FCC's ruling as inconsistent with the TCPA's statutory language. *Id.*

[12] Section 2342(1) of the Hobbs Act provides "[t]he court of appeals" the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." Section 2342(3)(A) provides the same with respect to "all rules, regulations, or final orders of . . . the Secretary of Transportation issued pursuant to . . . subchapter III of chapter 311."

18

have exclusive jurisdiction over claims "to the extent they depend on establishing that all or part" of an administrative regulation or order "subject to the Hobbs Act is 'wrong as a matter of law' or is 'otherwise invalid.'" *Id.* (quoting *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 462 (11th Cir. 2012)).

Applying these insights, we affirm the District Court's Hobbs Act analysis in its order granting summary judgment to the United States on the Chhetris' claims. If we were to credit the Chhetris' contention that FMCSA officials simply lacked the authority to grant extensions like the one granted to Sky Express under 49 U.S.C. § 31144, we would necessarily be passing on, and rejecting, the validity of a regulation to the contrary that is covered by the Hobbs Act and over which the District Court thus lacked jurisdiction. The District Court correctly held that "because [it] lacks jurisdiction to determine the validity of [49 C.F.R.] § 385.17(f) [(2011)], the Court must proceed with its discretionary function analysis based on the regulation as it stood in 2011." Our review, like that of the District Court below, is therefore limited to the portion of the Chhetris' claims that would not require us to assume invalid the version of 49 C.F.R. § 385.17(f) in effect at the time the FMCSA granted Sky Express the ten-day extension.

As a result, we proceed to review only the Chhetris' remaining claims that the FMCSA negligently failed to ensure that Sky Express had met two preconditions for receiving a ten-day extension. If this were so, the FMCSA's

19

decision to grant the extension would be outside the scope of the discretionary-function exception under the now-rescinded version of § 385.17(f).[13]

2.

Turning finally to the heart of the discretionary-function inquiry, we address the Chhetris' remaining claims that the FMCSA officials who granted the ten-day extension to Sky Express failed to meet two allegedly mandatory preconditions. In line with the version of § 385.17(f) then in force, the FMCSA could, "at [its]

---

[13] Because it does not affect the disposition of the Chhetris' appeal, we need not determine whether the 2011 version of 49 C.F.R. § 385.17(f) can be reconciled with the governing language of 49 U.S.C. § 31144. We pause to note, however, that the apparent conflict between the two is less stark than the Chhetris maintain.

In the process of promulgating the current version of § 385.17(f), the FMCSA stated that it was seeking to bring its regulations, which until 2012 had allowed for ten-day extensions for motor carriers that transport passengers or hazardous materials, "into conformity" with the governing statutory language, which provided for sixty-day extension for other motor carriers while expressly denying the same to those who transported passengers or hazardous materials. *See* 77 Fed. Reg. 64,759, 64,760 (Oct. 23, 2012) (codified at 49 C.F.R. pt. 385). Interpreting this language in a vacuum may well lead to the conclusion that the express provision for one set of extensions excludes any others under the so-called "*expressio unius* canon." *See United States v. Puentes*, 803 F.3d 597, 609 (11th Cir. 2015) ("'[W]here Congress includes particular language in one section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208, 113 S. Ct. 2035, 2040, 124 L. Ed. 2d 118 (1993))).

But statutory interpretation is not undertaken in a vacuum, and the context of language informs its meaning. Relevant here is the statutory history of § 385.17(f), which is not to be confused with its legislative history. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 432, 440 (2012) (differentiating "statutory history," "[t]he enacted lineage of a statute," from "legislative history," "[t]he proceedings leading to the enactment of a statute"). Since 1991 and prior to 2012, FMCSA regulations interpreting the Motor Carrier Safety Act of 1984 had provided for ten-day extensions to the time a proposed "unsatisfactory" rating would become final. In 1998, the statute was amended to expressly allow the sixty-day extensions discussed above. However, those amendments were silent as to the shorter, ten-day extensions. *See* 77 Fed. Reg. at 64,759–60.

20

discretion," grant ten-day extensions to motor carriers that transport passengers if (1) "the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section" and (2) "the FMCSA cannot make a final determination within the 45-day period."  49 C.F.R. § 385.17(f) (2011).  According to the Chhetris, this language must be read in conjunction with § 385.17(c), which in turn provides that a motor carrier requesting an extension must do so in writing and "must base its request upon evidence that it has taken corrective actions and that its operations currently meet the safety standard and factors specified in §§ 385.5 and 385.7."  *Id.* § 385.17(c).  That is, absent Sky Express expressly stating in writing that its operations were currently in compliance at the time of the request for a safety-rating upgrade and absent the FMCSA being unable to decide the request within forty-five days, the FMCSA officials simply lacked any discretion to grant an extension.  Because the email request from Sky Express did not so state, and because the FMCSA responded that it was "denying [Sky Express's] request" though it simultaneously scheduled an additional compliance review and granted a ten-day extension, the Chhetris conclude that the decision to grant the ten-day extension falls outside the FTCA's discretionary-function exception.

We reject the Chhetris' proposed reading of § 385.17.  Were we to accept that reading, we would be erecting by judicial fiat yet another set of administrative

21

hoops that FMCSA officials must assiduously jump through before they could even begin to consider exercising the considerable discretion laden specifically in § 385.17 and generally throughout the highly technical regulatory regime for ensuring the safety of motor carriers in interstate commerce fashioned by Congress. This we cannot do.

Nor are we the first court to reach this conclusion. The Fourth Circuit, ruling on a virtually identical case arising out of the same Sky Express crash, recently rejected the very interpretation of § 385.17 advanced by the Chhetris in *Pornomo v. United States*, 814 F.3d 681 (4th Cir. 2016). The *Pornomo* Court, after laying out the two-part *Berkovitz* analysis to determine whether the discretionary-function exception applies,[14] concluded that the FMCSA's decision to grant the ten-day extension "involved an 'element of judgment or choice' and was 'based on considerations of public policy.'" *Id.* at 688. "On the face of the regulation," the express provision of discretion for granting extensions "requires an exercise of judgment or choice by the FMCSA." *Id.* And it is beyond dispute that

---

[14] As discussed above, the two-part *Berkovitz* analysis first requires the reviewing court to determine whether the conduct in question involves "an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958, 100 L. Ed. 2d 531 (1988). Second, the court must determine whether that judgement "is of the kind that the discretionary function exception was designed to shield"—that is, whether the judgment was "based on considerations of public policy." *Id.* at 536–37, 108 S. Ct. at 1959. If the discretionary-function exception extends to the conduct in question, claims based on that conduct brought against the United States are barred "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

"government regulators' safety determinations" for motor carriers "involves considerations of public policy." *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 324, 111 S. Ct. 1267, 1274, 113 L. Ed. 2d 335 (1991), for the proposition that if a regulation "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion").

Turning to and rejecting the same proposed reading of § 385.17 advanced by the Chhetris, the Fourth Circuit observed that such a reading "cuts too fine a distinction." *Id.* at 689. Considering the language and context of § 385.17 together, the *Pornomo* Court determined that discretion "suffuses" the FMCSA's decision to grant extensions under the language of § 385.17(f) then in effect. *Id.* Because that language "leaves it to the FMCSA to determine whether a carrier's submission provides evidence that corrective action has been taken, and whether the agency has the resources to reach a final decision within 45 days," these preliminary determinations concerning the weight afforded to the motor carrier's submitted evidence and the availability of FMCSA resources likewise require an element of judgment and "constitute discretionary functions themselves." *Id.* Put simply, § 385.17(f) is not a "'check list.'" *Id.* Although the Court ultimately concluded that the FMCSA had "exercised this discretion," whether the FMCSA had done so properly or not "does not matter" because the discretionary-function

23

exception applies "'whether or not the discretion involved be abused.'" *Id.* (quoting 28 U.S.C. § 2680(a)).

We fully endorse the Fourth Circuit's capable analysis.  And we agree that the FMCSA officials' decision to grant the ten-day extension requested by Sky Express falls under the discretionary-function exception to the FTCA.  As such, the United States has not waived its sovereign immunity to be sued on tort claims related to that decision.  The District Court therefore correctly dismissed the Chhetris' suit for want of federal subject-matter jurisdiction.

## IV.

For the foregoing reasons, the District Court's order dismissing the Chhetris' complaint is

AFFIRMED.

24

ANDERSON, Circuit Judge, concurring:

I concur in all of Judge Tjoflat's opinion except so much of Part III.B.1 that relies upon the Hobbs Act, 28 U.S.C. §2342(3)(A), and our decision in Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014), to hold that the district court did not have jurisdiction to determine the validity of 49 C.F.R. §385.17(f) (2011).  I would pretermit that issue, leaving it for decision at a later time.[1]  In my judgment, it is not necessary for us to decide whether the ten-day extension provision of 49 C.F.R. §385.17(f) is valid, nor whether the district court had jurisdiction to decide that issue.  In any event, as the Fourth Circuit in Pornomo said:

> Even if Pornomo could challenge the validity of 49 C.F.R. §385.17(f) in the district court, the court would still lack jurisdiction over his FTCA claim because the FMCSA's promulgation of the regulation was itself a discretionary act.  "[T]here is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs."  Gaubert, 499 U.S. at 323.  Thus, the FMCSA's decision to promulgate 49 C.F.R. §385.17(f), even if that decision proved to be an abuse of discretion, would be shielded by the discretionary function exception.  See 28 U.S.C. §2680(a).

Pornomo v. United States, 814 F.3d 681, 690 (2016).

---

[1]    The instant case is in a somewhat different posture than was the situation in Mais. The regulation at issue here, at least arguably, had already been "invalidated" by the FMCSA itself when in 2012 it rescinded the provision allowing a ten-day extension on the ground that it was inconsistent with the statute.

25

In other words, wholly aside from the possible Hobbs Act bar, the district court was without jurisdiction to hold that 49 C.F.R. §385.17(f) was invalid because the promulgation of that regulation was protected by the discretionary function exception.